**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**JASMINE LEMONS** **PLAINTIFF**

**V.** **No. 4:25-CV-01090-JM-ERE**

**SOCIAL SECURITY ADMINISTRATION,
COMMISSIONER** **DEFENDANT**

**RECOMMENDED DISPOSITION**

This Recommended Disposition ("RD") has been sent to United States District Judge James M. Moody, Jr. You may file objections if you disagree with the findings and conclusions set out in the RD. Objections must be specific, include a factual or legal basis, and be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact.

## I. Background

On July 14, 2022, Ms. Jasmine Lemons filed an application for disability insurance benefits due to non-epileptic seizures, orthostatic hypotension, sleep apnea, dissociative personality disorder, bipolar disorder, chronic fatigue syndrome, migraines, kyphoscoliosis, schizoaffective disorder, and generalized anxiety disorder. *Tr. 13, 339*. Her claim was denied initially and upon reconsideration. On September 5, 2004, an Administrative Law Judge ("ALJ") held a hearing, where the ALJ heard testimony from Ms. Lemons and a vocational expert ("VE"). *Tr. 33–53*. The ALJ issued a decision on September 27, 2024, finding that Ms. Lemons was not

disabled. *Tr. 13–26.* The Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. *Tr. 1-3*.

Ms. Lemons, who was twenty-seven years old at the time of the hearing, completed EMT and CNA programs at a vocational school and has past relevant work experience as a CNA and home health aide. *Tr. 24, 38, 50.*

## II. The ALJ's Decision[1]

The ALJ found that Ms. Lemons had not engaged in substantial gainful activity since her alleged onset date of May 15, 2022, and had the following severe impairments: seizure disorder, mood disorder, anxiety disorder, personality disorder, PTSD, somatoform disorder, and orthostatic hypotension. *Tr. 16.* The ALJ concluded that Ms. Lemons did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Tr. 17.*

According to the ALJ, Ms. Lemons had the residual functional capacity ("RFC") to perform medium work, with the following limitations: (1) occasional climbing of ramps and stairs; (2) no climbing ladders, ropes, or scaffolds; (3) no

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)(4).

work around hazards such as unprotected heights or dangerous moving mechanical parts; (4) no driving or operating heavy industrial equipment; (5) can understand and remember simple instructions; (6) can sustain attention and concentration to complete simple tasks with customary workplace breaks; (7) can use judgment to make simple work-place decisions; (8) can interact as needed with supervisors and coworkers but only occasionally with the general public; and (9) can tolerate occasional changes in a routine work setting. *Tr. 20.*

Based on the VE's testimony, the ALJ found that a substantial number of potential jobs were available in the national economy that Ms. Lemons could perform, including hand laundry worker, salvage worker, and store laborer. *Tr. 25, 51-52.* Accordingly, the ALJ found that Ms. Lemons was not disabled.

## III. Discussion

### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider

not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

**B. Ms. Lemons' Arguments for Reversal**

Ms. Lemons argues that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to: (1) discuss the bio-telemetry heart monitor results; (2) properly consider the state agency psychological consultant's opinion; (3) find her headaches non-severe; and (4) properly assess her "complaints of fatigue, dizziness, and weakness." *Doc. 11*. After carefully reviewing the record as a whole, I recommend affirming the Commissioner's decision.

**C. Analysis**

**1. Bio-Telemetry Heart Monitor Results**

Ms. Lemons asserts that results from wearing a heart monitor showed two fainting episodes, but the ALJ "treated the report as if the heart monitor showed normal readings . . . ." *Doc. 11*

Ms. Lemons correctly points out that the ALJ did not mention the two fainting episodes detected by the heart monitor. However, as Ms. Lemons concedes, "Dr. McMullin did not address the two episodes of fainting" either, which suggests they

were not a concern to her treating physician. *Doc. 11*. Ultimately, as the ALJ noted, Dr. McMullin decided to start Ms. Lemons on a new medication, "discussed the importance of increasing water intake and limiting caffeine intake," and "asked her to continue to keep a blood pressure log." *Tr. 21, 1442*. Additionally, the RFC accounted for Ms. Lemons' low blood pressure and potential fainting by including the following work restrictions: no climbing ladders, ropes, or scaffolds; no work around hazards such as unprotected heights or dangerous moving mechanical parts; and no driving or operating heavy industrial equipment. *Tr. 19*.

The ALJ's failure to specifically mention the two fainting episodes does not support a finding of reversible error.

**2. State Agency Psychological Consultant's Opinion**

Ms. Lemons notes that the ALJ found Dr. Kenneth Hobby's opinion persuasive but did not adopt his opinion that Ms. Lemons "would probably respond adequately to work pressure in a physically appropriate work-like setting where she didn't have to work around a lot of other people." *Doc. 11; Tr. 1342*.

Ms. Lemons argues that there is a "notable difference" between Dr. Hobby's conclusion and the RFC's limitation of "interact[ing] as needed with supervisors and coworkers but only occasionally with the general public." *Doc. 11; Tr. 20*.

There is no conflict between Dr. Hobby's opinion and the RFC's interaction restriction. Dr. Hobby's opinion suggests only that Ms. Lemons might perform better

if she did not work around "a lot" of people, not that she can't be around any people. Considering this, the ALJ appropriately limited interactions with supervisors and coworkers to "as needed." "The ALJ was not required to adopt the exact limitations set forth in the opinions [the ALJ] found persuasive, and substantial evidence supported the RFC findings regarding [Ms. Lemons'] abilities to interact with others in the workplace." *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761, at *1 (8th Cir. Oct. 12, 2023).

Ms. Lemons has not demonstrated reversible error on this point.

**3. Headaches**

Ms. Lemons asserts that the ALJ erred in finding her headaches non-severe because "the records frequently mention headaches as a problem" and she was prescribed medications for treatment. *Doc. 11*.

The ALJ noted that Ms. Lemons has "a history of migraines but [was] no longer taking medication and has had no treatment in some time." *Tr. 16*. Additionally, in "May of 2022, [Ms. Lemons] reported she had not had a migraine headache in a few years." *Tr. 17.* Based on this information, the ALJ properly concluded that the "evidence does not support a finding of any additional functional limitations" and the migraines were non-severe. *Tr. 17.* Additionally, Ms. Lemons told her treating physician that her headaches were "not terribly severe" and that "medication was beneficial in preventing her headaches." *Tr. 1150-51.* "An

impairment which can be controlled by treatment or medication is not considered disabling." *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

The ALJ's finding that Ms. Lemons' headaches were non-severe was supported by the medical evidence.

**4. Complaints of Fatigue, Dizziness, and Episodes of Weakness**

Ms. Lemons argues that the "ALJ failed to give adequate consideration to [her] complaints of fatigue, dizziness, and weakness." *Doc. 11*. She asserts that the ALJ provided "no explanation of how [her] statements about her symptoms are inconsistent with the medical evidence or other evidence in the record." *Id.*

Normally, the Court should defer to an ALJ's assessment of the claimant's subjective complaints. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021). An ALJ's brevity is not reversible error so long as the ALJ's reasoning allows for "appropriate judicial review." *Id.* When evaluating the consistency between subjective complaints and the record as a whole, an ALJ considers, in addition to the objective medical evidence, various factors, including: a claimant's daily activities; the duration, frequency, and intensity of symptoms; the dosage and effectiveness of medication; precipitating and aggravating factors; and functional restrictions. *See* Social Security Ruling 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). A claimant's subjective allegations may be discounted if the evidence, as a whole, is inconsistent with the allegations.

*Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). In short, an ALJ may discredit some or all of the subjective statements in the record, based on a review of the above *Polaski* factors. The ALJ need not explicitly discuss each of the *Polaski* factors in the written decision if it is clear they were considered. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).

The RFC accounted for Ms. Lemons' fatigue, dizziness, and episodes of weakness by incorporating the following restrictions: no climbing ladders, ropes, or scaffolds; no work around hazards such as unprotected heights or dangerous moving mechanical parts; and no driving or operating heavy industrial equipment. *Tr. 19.* The ALJ also noted that, although Ms. Lemons woke up fatigued, "she would begin to feel better" once her heart rate increased. *Tr. 23.* The ALJ discussed many other factors, such Ms. Lemons' ability to independently perform activities of daily living; her improvement with conservative treatment; and the relatively normal clinical examinations and neurological workups. *Tr. 16-24*. Additionally, Ms. Lemons' treatment providers recommended regular exercise, which she was doing regularly. *Tr. 24, 530, 533, 536, 539, 671, 744, 746, 759, 765, 796, 1402.* "A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physicians are recommending increased physical exercise." *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). In fact, Ms. Lemons reported in 2024 she "continues to go to the gym for an hour," six times a week. *Tr.*

*1443*. The ALJ correctly noted that Ms. Lemons showed "no marked limitations based on her activity level." *Tr. 24.*

The ALJ considered the relevant factors when deciding that Ms. Lemons' subjective complaints were not entirely consistent with the record as a whole.

**IV. Conclusion**

As set out above, the ALJ applied proper legal standards in evaluating Ms. Lemons' claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the Commissioner's decision and enter judgment in favor of the Commissioner.

Dated 31 July 2026.

UNITED STATES MAGISTRATE JUDGE